Operating LLC, Mr. Kalaizi. You may proceed. Thank you. Good morning, Mr. Fischer, Mr. Thornton, Mr. Hartman. My name is Roger Kalaizi. I represent Euro-Pro Operating LLC. I request three minutes for rebuttal. That request will be granted. Thank you. I want to focus on three areas as grounds to reverse and vacate the preliminary injunction issued by the district court. First, that the district court improperly found the advertising claims literally false, ignoring substantial and uncontroverted consumer perception evidence of ambiguity. Do you want to talk for a minute about why consumer perception about the advertising would be relevant in a general sense when the assertion is made by your opponents and by the district court that the disclaimer is extraordinarily precise? Yes, Your Honor. Of course, the burden to show that there's literally false advertising, which is all this case is about, literally false advertising on retail packaging at Exhibit A-806, which is up here, and to claim more powerful steam versus Rowenta at half the price. So the first has to be a finding of that the claims are unambiguous, and then it can be found literally false. Sure, but you haven't given us all that, right? Because it doesn't just say twice as powerful at half the price. It defines what it means when it says twice as powerful, right? Right. It states on the bottom of the box, independent steam-versus-testing to Rowenta, 9080, paren, grams-slash-shot, n-paren. I understand that district court views that to be very precise language defining a test, but the test that was referenced on the bottom of that box is a velocity test plus grams per shot. So velocity, mass, time, which is the definition for power. But here's the direct answer to your question, Judge Jordan, and that is that in order to get there, to find that it was unambiguous, what the court is saying, no reasonable consumer would believe that more powerful steam means anything except more steam. And so the court had to disregard the statement more powerful steam, basically take the word powerful off, and come to the conclusion that that's the only thing that a reasonable consumer would take away in order to find this unambiguous. Was it that it had to take the word powerful off, or was it that it took the definition of powerful that your people chose to put on the box? I mean, if it had said more powerful steam by itself, maybe your argument would have more weight, and indeed you contend that the court, to the extent any relief should have been given, should just get rid of the disclaimer. But the disclaimer's there, and with the disclaimer, doesn't the definition of power have to follow what you define power to be? No, the Lanham Act requires that an advertisement be taken in its entirety. And so when Dr. Gary Ford designed the survey and stated his report, which was completely unchallenged and came into evidence, he allowed consumers to take a look at the box and indicate what the advertising claims were. And so they had an opportunity to look at the box, to look at the bottom of the box, the entire time they took the survey. And so what you're looking at is we're submitting the survey for the purpose of showing that the claims are not unambiguous. Well, that's understood, and I apologize if I'm seeming obtuse. I don't mean to. I guess maybe I can't help it. But I'm trying to get you to answer this question. The district court's opinion hinges on or appears to hinge on the assertion that you, your client, defined what powerful meant. And it doesn't matter what people in a mall think when they look at the box. You gave a precise definition of what more powerful steam means, and you've got to live with the definition of what more powerful steam means. And when that definition is applied, it's a literally false claim based on SEB's internal testing and the independent testing they did. And that's not refuted in any way by any evidence you put in. That's how I understand the record. If I misunderstand the record and the district court's opinion, let me know. But I'm trying to get you to respond to that assertion, legal assertion by the district court, that you defined power and you have to live with your definition. What's wrong with that analysis by the district court? Well, first I dispute the district court's finding that this is a clear definition, and we dispute that. What the district court is saying, even with respect to the reference on the bottom of the box, the consumers take it to mean that power doesn't mean power. It doesn't mean the literal words on the page. It means only mass, only more power, not more powerful. I'm sorry, only more steam, not more powerful steam. And so what the court is saying is that not only is the entire advertisement as a whole unambiguous, but also that the reference on the bottom of the box... Well, why isn't the court right on that? Isn't this case the same as Penrod? No, Your Honor. Tell us why this isn't unambiguous. It's not unambiguous because when you look at the entire advertisement as a whole, the answer is not that the reasonable consumer is only going to take away that it means more steam. But isn't the importance part of the Penrod decision is that if, in fact, the advertisement is unambiguous, consumer surveys may be disregarded? Typically, that would be the reverse, where you would have a consumer survey to try to show that something is false. Yes, but under Penrod, wasn't the holding in that case the opposite? I mean, you want to get the consumer survey in, but the court said we're going to disregard that because we find that the advertisement is unambiguous. Right, that the court got to the point where it said that no reasonable consumer could possibly take away another message from this advertisement as a whole, except that more powerful steam... Well, that's the message your client tried to portray, was it not? No, the message the client tried to portray was that the reference to independent steam burst testing is velocity. Now, it could have been more precise, but it wasn't, even if it said... You know, I think that particularly you've got your two little boxes, let's call them, blocks. I mean, where you compare to Rowenta, it almost requires somebody like me, the average consumer, although I don't know when I last bought a steam iron, but to turn that box over and read the restrictions. I'm not sure that the mere fact that you have a little insignia there, that I'm going to turn that box over and read it. I'm just going to think that you're flagging the fact that it's half the price. That's precisely the point, Your Honor. So consumer takeaway was consistent with the survey, is that people... In fact, the testimony by Apelli's own witnesses are nobody turns the box over to look at the disclaimer. The argument by Apelli to the court was that nobody really is not likely to look at those things. And in fact, on opposite cases, if we said on the box, more steam mass, and on the bottom say, measured by power, one-half mass times velocity squared over time, they'd be in here screaming, you don't have more mass, the message is more powerful steam. That's a remarkable proposition because those aren't the facts. We don't know what they'd be saying, right? What we do know is that your folks chose a definition. Now, you appear to be making a couple of arguments. One is, yeah, we chose a definition, but who cares about that? Consumers don't read definitions. And your second argument appears to be, but the definition we chose wasn't all that clear. Which of those do you think is your better argument legally? I think the argument is that consumers look at an advertisement as a whole, and that's the law, and that when consumers look at that, they view it to be more powerful steam, not more mass. Nobody played back more mass. Does the advertisement as a whole include the disclaimer? It does. And that's what's great about the survey, which was submitted to show that it was ambiguous, and that is that... Is there any evidence that the people... I mean, in Dr. Ford's survey, did he say, hey, turn that box over and read that disclaimer, tell me what that means? No, it would be improper for him to do that. Right, so we have no idea whether consumers were reading the bottom of the box and interpreting the box in light of the full labeling or not, do we? Which is the foundation of advertising law under the Lanham Act, that you've got to look at a consumer's perception when they're purchasing the product. And so you can't say, hey, turn the box over and tell me what you think about that claim, because the consumer is in a shopping environment as if they were purchasing the product. As a matter of law, though, we're required to assess it in light of the entirety of the labeling, right? Correct. Right, so are you giving us conflicting messages here? Just listen to what the consumers say, whether they're looking at the entirety or not. And on the other hand, you're obligated to look at the entirety of the labeling. No, I think the message is consistent. When you look at the entirety of the labeling, the consumer takeaway, which is the basis for finding false advertising, the consumer takeaway is not more mass. And again, we say there's an error in finding that that definition only said more mass. But you agree, don't you, Counsel, that we only get to the consumer takeaway if there's an ambiguity? Yes. So if this is, in fact, unambiguous, you lose. If it is ambiguous, you win. That's the linchpin of the case. If it's unambiguous, our challenge here is that in determining unambiguous, the court disregarded the plain words on the box. At best, if we said, for purposes of argument, if we said more powerful sting really just means more mass, if we put that on the bottom so there's no question about what it says, then you would have two conflicting messages, more powerful sting and just more sting. Is Judge Hardman right, though, that it comes down to ambiguous or not ambiguous? And if the conclusion we reach is that the district court was correct, it's unambiguous, then you lose. And if it's ambiguous, you win. Is there a yes or no to that? Well, yes. If the court were to properly find that a claim is unambiguous and false, then, of course, then it's a decision that's false advertising. And there's no need to look to consumer surveys? Well, I think the fact that the court disregarded the consumer survey evidence in light of the fact that you had, at best, conflicting messages on a box that you've got to look at and hold and that the appellees argue nobody looks at the bottom of the box and that Clemens Oth, their scientist, says that mass alone is not power, that's for sure, and all of that information the court had in saying, well, I don't want to know what consumers think. I think it's an error to not take that survey because you can't look at this box and say, like you might in the Pernod case, you can't look and say it's very clear from looking at it exactly what's going on because it's not. It's not up there. If in that case it said Puerto Rican run on the bottom of the bottle, I think you'd have a very different situation there. I'm glad you corrected my pronunciation of Pernod. I was confused when you said Penrod. I'm out of time here. We'll have you back for rebuttal. Okay. There was a misapplication of the law on a finding of irreparable harm. The court presumed it, that there was irreparable harm, and therefore it didn't meet that factor. We'll ask you on rebuttal on that. I want to have some questions of opposing counsel on that question. Okay, thank you. Ms. Jankowski. Good morning, Judge Fischer, Judge Jordan, and Judge Hardiman. Gretchen Jankowski on behalf of BPSB USA, Inc. I wanted to start briefly responding to some of the comments that the panel has already made. Judge Jordan, you are right. They gave a precise definition, and they have to live by it. Well, I'm not taking positions, Ms. Jankowski. I'm only asking questions. I understood, and I wanted to respond to that because that clearly was the position taken in the complaint. It was clearly the position that was taken at the preliminary injunction hearing, and it clearly is what this case hinges on. So why don't you answer the question, the point that your opposing counsel has pressed, which is even taking that definition into account, the definition itself is not clear. It doesn't say what the district court said it said and what the testing people took it to say. It's not that definitive. I disagree with that, and if you look at exactly what it says, it says independent testing, okay, number one, and it defines how they're going to measure that in terms of grams per shot. That's exactly what the evidence was presented by Group 7 at the hearing below. We presented not only internal testing, which was obviously the first testing that was done, but we also presented independent testing, and the courts went to great lengths to analyze that data. More importantly, the defendant in the case, EuroPro, also included that evidence. They did. Despite what they say, they actually did the same test. Their expert did the same test, and lo and behold, that evidence showed that the claim was false, and that's the reason that the court ultimately concluded that indeed, one, is it unambiguous? That, of course, is the seminal question, and as Judge Hardiman recognized, if she concluded correctly that it was unambiguous, there's no need to even talk about the survey evidence. She concluded that. She did it in accordance with Third Circuit precedent. And Pernaut said you can ignore the survey evidence. Exactly, and to your point, Judge Fischer, this is exactly like Pernaut. It is exactly like that case, and the court was very clear about the fact that, yes, it is a problem if survey evidence is ignored if the claim is misleading or if the judge concludes fundamentally, which is the first step, it's ambiguous. Isn't there one difference, though? I mean, as I recall the labeling in Pernaut, the sort of competing labeling, if you will, was fairly manifest to the consumer, and here it's pretty unlikely to think that someone's going to pay much attention to the disclaimer on the bottom of the box. Isn't that a factual distinction between the two cases? Well, I think that there is a distinction in the sense that, yes, that label, it was directly underneath it, so in this sense it's on the same package. However, there is an offhand remark by a witness that consumers don't turn it over. If you look at the actual consumer survey evidence, which, by the way, the judge did admit, it's very clear, number one, that the consumers were looking at the entire box. They were looking at the fact that Rowenta was called out. Well, now you want that evidence in. No, I don't want the evidence in, but I do think that the judge certainly exercised her discretion in admitting the evidence. Well, I think it did, but does it help you for the consumers to have examined the box carefully? Does it help? I don't know that it helps one way or the other because that's not what the survey was designed to test. The survey was designed to test, by the way, not the ad that's at issue. It's more proper to say that the district court heard testimony on the consumer evidence but disregarded it in its ambiguity analysis. I think that to say that the district court disregarded it is to ignore what the judge originally said in her opinion on appendix page 2. She said she considered everything. Whether you consider it and ultimately choose to adopt it, as you know, is a very different issue. At the end of the day, once she concluded what she did... But she disregarded it in her analysis. In her analysis, I would agree with you. She did not specifically discuss it and explain why she disregarded it. That's correct. If you would, would you turn a little bit to the irreparable harm prong? Yes. Even assuming that the district court was correct here on the likelihood of success on the merits, how did you show irreparable harm? There's not a presumption. That's correct. We know there's not a presumption here. We know that there is, and I think the judge knew that there wasn't. The judge did a good job of analyzing the case law on that even before our most recent decision. That's correct. How did you show that there was irreparable harm? The focus of the hearing took two... There were two aspects to it. Clemensoth was our literally false testing evidence gentleman. He provided the foundation on that issue. Scott Pollard, on the other hand, was presented as a witness on two points, irreparable harm and harm, as well as the setting of the bond. That's all he really testified to. Well, the district court rejected his testimony about reduced sales, right? She did. So what was the testimony he gave that supports irreparable harm? The testimony that Mr. Pollard gave was that, number one, these are competitors, and Rowenta is the market leader. That's not disputed here. The significance of that is that they're competitors on the same store shelves. The packages appear side by side. That matters. What Mr. Pollard testified to was a loss of reputation, a loss of goodwill. On the basis of what? On the basis that this is a direct attack on Rowenta. It is a well-recognized brand. No one disputes that. So there was no testing. There was no survey. This was Mr. Pollard saying, in effect, it stands to reason we'd be hurt. I think it's a little bit more than it stands to reason. Well, what is the more? That's what we're trying to get at. The more is his testimony as somebody that's been involved in this industry as a marketing person for years. His gut feeling? I think it's more than a gut feeling. What's the more? The more is that retailers rely on brands when they decide who they're going to stop. He had heard, certainly, and granted it's hearsay, he had heard that, indeed, the shark advertising was having an impact on their market. That's the piece she rejected, though, right? Well, I'm not sure she actually rejected that piece. What she rejected was the specific testimony on the decline in sales at the Target. That's different. I'm not sure she actually rejected that specific piece of evidence. Well, is it fair to say that your argument comes down to he's a knowledgeable man and it stands to reason that if you denounce your competition, that that's going to have an effect on reputation? As I said, I think that his testimony, when you look at it on balance, there was more to it than I have a gut feeling that we're going to lose sales or that our reputation. I've just been pressing you, and the only more I heard was he heard something in the market. But that's the only more I've heard. So if you've got more, more, I'd like to hear that, too. I'll recite the testimony. Groupset has invested and continues to invest millions of dollars in advertising, promotions, and new product development. If we allow ourselves to be falsely mischaracterized by lower-priced products and claim that they're better without doing anything about it, it becomes less important both to consumers and retailers. That's the point they're making. I guess they're saying that's him speculating, and what's your response to that? My response to that is that's not speculation. That's the kind of testimony that is often given in preliminary injunction hearings because the standard is not actual irreparable harm. It is a permanent injunction. This was not a permanent injunction. This was a preliminary injunction. Is it likely? That is the standard, and his testimony was definitely more specific. She heard about it on direct. She heard about it on cross because some of the testimony came out on cross, and she got an affidavit from him, and it all talks about irreparable harm in terms of the reputation. But if we accept your argument, it's a pretty small hurdle for you to jump, right? I mean, basically, as I read the record, you've got Pollard's testimony of Judge Eddy saying, I find him credible, and that's it. And at the end of the day – I mean, is this because this is a two-hour injunction hearing, and we don't bring in expert witnesses to talk about branding and call someone from Madison Ave. to talk about how much projected sales you're going to lose? I mean, should we absolve you of that burden in an injunction hearing? I don't think I should be absolved of the burden, but I also don't think that the burden necessarily requires that level of evidence at a plenary injunction hearing where you have a day, you've been told you have a day, and it's evenly split. If it were a five- or six-day hearing, maybe it's a different result. Maybe you do bring in an expert, but the reality is that the expert wasn't brought in specifically. The judge actually referred to our witness as an expert. Was he qualified specifically that way? No, he wasn't. But clearly she felt, based on the testimony, that he, in fact, had sufficient marketing experience to be able to testify about the impact that that ad was going to have and was having on the Rowenta brand. So with that and the fact that that is a finding of fact and it can't be reversed unless there's clear error associated with it. Well, when you say it can't be reversed unless there's clear error, I mean, if we determined that it was clearly erroneous for her to accept the statement that he said, you know, we put a lot of money in this, and when you denounce us in a comparative ad, that's got to hurt. Now, I know you've said there's more and more, but still been waiting for the more. It comes down to that. It comes down to him saying, I know what I'm talking about, and this stuff hurts in the market. That wouldn't be a statement that she was clearly erroneous, as a matter of fact. It would be a statement that she was wrong as a matter of law to accept that as enough, wouldn't it?  as well as his affidavit and conclude that coupled with the evidence in the hearing on irreparable harm. I think that if you conclude that that evidence was insufficient, then you're going to conclude it was clear error, and on that point, she gets reversed. Yes, I agree, but the standard is not, of course, as the panel knows, would you have done it differently? The standard is, looking at her, what she did, do you give her sufficient deference in terms of the testimony that was before her, as well as the documents that were in front of her? Let me ask you this question. Your pro argues that the district court used a relaxed standard in determining whether or not there was irreparable harm. Now, the district court correctly determined that there was not any presumption of irreparable harm, but isn't your pro correct that at least some of the language where the court, for instance, said that it used a reasonable basis language or the mere risk of harm language, doesn't that tell you that the court was looking at a relaxed standard? The fact that she cited that case does not tell me that she used a relaxed standard, because if you look at her analysis, the balance of what she said demonstrates that she, in fact, considered the evidence and determined that, indeed, we had proven that there was likely to be irreparable harm. And, in fact, in the appendix A18, she says, and Seb has convincingly demonstrated that it is likely to suffer a loss of control of reputation, loss of trade, loss of goodwill, and that those are, in fact, grounds for irreparable injury under the Third Circuit precedent, specifically the optician's case. So I disagree. Yes, she cited that language. Preferred she had not, because I don't think she actually held us to that standard. Even if the court did cite and perhaps did use a relaxed standard, is that fatal to your case here, or can we use an analytical approach as was used in Novartis and make the determination of irreparable harm ourselves? You absolutely can make a decision based on irreparable harm, and you can conclude, as they did in Novartis, that, indeed, at the end of the day, her citation to that was harmless error. And to the extent that you think that that somehow impacted what she did or the fact that she didn't consider the evidence that was before her and hold us to the standard she was supposed to, I think, if anything, it's harmless error. And I absolutely think she cited the right standard and held us to it, and we knew we were held to it, which is why we put on the evidence that we did. I see I'm out of time. I actually have one more question for you, if my colleagues will indulge me. The court and your opposing counsel have taken the position that the injunction was too broad, that they should still be allowed to make the assertion that they've got more powerful steam. What's the response to that? Did the court demand they cover up too much? I don't think that the court demanded that they cover up too much. The court demanded that they cover up the false ad, which is what they were ordered to do, and to remove hang tags, which they were ordered to do, and to get it off of store shelves. It's very limited in scope in terms of what she's addressing. She does not say you can't come out with another ad. That's clearly not what she said. If they come out with another ad and perhaps do it in another way, obviously, as I think you pointed out, Judge Jordan, that's a different case. Okay. Okay, thank you. Thank you, Ms. Jankowski. Mr. Gillespie? Thank you. I can proceed? Thank you, Your Honors. What Ms. Jankowski was arguing is that the court should be able to do a presumption. What we're talking about here is the district court went back through the elements of the false advertising. The parties compete against each other. There's direct comparative advertising on the packaging. Steam tires are important. Even if you can label it a presumption, but is there something actually wrong with making an inference? Assume we agreed with you that all we were talking about here was what this gentleman thought the natural results were going to be. What's wrong with taking the informed judgment of a fellow with years of experience in the field and saying when a competitor does a head-to-head comparison, it says we're twice as good at half the price, and that turns out to be literally false. That hurts. It's designed to hurt. Why shouldn't we make the analytical step and let the court make the analytical step that when you try to hurt somebody, you hurt them? Two weeks ago, this court says you can't speculate. And in the Farring case, this court held that. Is it speculation or is that just fair inference? Fair inference from the facts. When you put on your box, in effect, those guys next to us stink, and people read that, shouldn't it be a fair inference from the facts that saying, in more polite language, next to us they stink actually hurts somebody's reputation? It's not a fair inference from the facts. First of all, he wasn't qualified as an expert. He wasn't qualified to give opinion testimony. But why do you need expert testimony? Let me ask it this way because I share Judge Jordan's concern. Loss of goodwill, loss of reputation, don't you agree that that can constitute likelihood of irreparable harm? If you can clearly show that there's likely to happen. All right. Now, who can testify about loss of goodwill? Are you saying this witness was not competent? Pollard was not competent to testify about loss of goodwill and loss of reputation. Is that your argument? Well, that's one of the arguments, Your Honor. Why? He would seem to me to be the most competent. He's the one who's paid probably a decent salary to focus, to ensure that his brand enjoys good reputation and goodwill in the market. Is he not? He's a marketing director. He's not a consumer perception expert. He has no idea. That's what marketing is, isn't it? Your argument is marketing directors don't know about goodwill and reputation? Marketing directors might see if they've lost sales. But they don't necessarily know. And he certainly wasn't qualified to establish that, hey, we've lost goodwill, we've lost reputation. The way you prove that is by having customers write in and say it. So it has to be an independent third party. Your argument, as I hear you, is that no witness within the company, because they've skin in the game and they're self-interested, that can't cut it. It has to be some independent third party. But it has to be clearly established. And a marketing director alone with nothing to back it up. Everything he stated was not backed up by example. He didn't say, I know. Your ads backed it up. That's the question that's being put to you. You call that speculation. The question is, why is that properly labeled speculation and not labeled fair inference from the words you chose? Because if you go back to that standard, you disregard what this court did two weeks ago. The court said you can't presume from a finding of falsity that there's irreparable harm. It's a separate standard. It's not simply a finding of falsity. It's a finding of falsity with respect to a specific characterization. Those guys are no good next to us. That's the assertion that's made on the box. If the assertion made on the box is those guys are no good next to us, why isn't it a fair inference from that that if that turns out to be literally false, the assertion will impact reputation because it's aimed specifically at reputation? A preliminary injunction is a drastic remedy. It should only be granted under the most severe circumstances. And literal falsity has to be a bald-faced lie, as Judge Posner said. And when you take and say I'm going to presume irreparable harm from a direct comparative advertisement because that's all I really need to rely on your bad language on a packaging and change the status quo while we get ready for trial, there's no proof of false advertising here. And so that's why there's a requirement of irreparable harm to demonstrate today that there's clearly a likelihood of irreparable harm. That wasn't done here. There's only one iota of evidence from a sales guy or from a buyer. And he said there's a risk that somebody, a risk which has been rejected two weeks ago, a risk that somebody might have buyer's remorse. That's it. There's not one shred of evidence. All the rest is speculation. And this court said even with a third-party doctor who said doctors are not likely to prescribe this product because of black box false representation. The court said that's speculation. It's not good enough. It's not going to meet a winner-in-effect. Do you agree with opposing counsel that even if the district court used the relaxed standard to assess irreparable harm, we can do that analysis ourselves based on the record? Well, yes. In fact, I would say that the, well, it's a de novo review because you used the wrong standard. And the court not only said that they looked at it with a relaxed standard, but the court said they should make that determination. And I would tell you that the record here was not secure. I understand what you're saying, but you're not saying that we have to vacate and send it back for the district court to do it. I think the court could look at this evidence and say, we don't want you to send it back. You answered my question. Okay. Mr. Galassi, thank you very much.